**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**BRENDA PARATORE,**

                              **Plaintiff,**

                  **v.**                                **6:05-CV-1356**
                                                        **(GLS)**

**COMMISSIONER OF SOCIAL SECURITY**
**ADMINISTRATION,**

                              **Defendant.**
_____

**APPEARANCES:**              **OF COUNSEL:**

**FOR THE PLAINTIFF:**

Office of Peter W. Antonowicz      PETER W. ANTONOWICZ, ESQ.
1300 Floyd Avenue
Rome, New York 13440

**FOR THE DEFENDANT:**

HON. GLENN T. SUDDABY       WILLIAM H. PEASE
United States Attorney            Assistant U.S. Attorney
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

**Gary L. Sharpe**
**U.S. District Judge**

## DECISION AND ORDER

### I. Introduction

Plaintiff Brenda Paratore alleges that hyperthyroidism, intestinal disorders, and affective disorder have disabled her, and challenges the denial of benefits by the Commissioner of Social Security.  Having reviewed the administrative record, the court affirms the Commissioner's decision.

### II. Procedural History

After Paratore filed for social security disability insurance ("SSDI") and supplemental security ("SSI") benefits in June 2002, her application was denied, and a hearing was conducted by Administrative Law Judge Steven De Monbreum (ALJ).  (Tr. at 70-72, 323-97).[1]  In November 2004, the ALJ issued a decision denying benefits, which became the Commissioner's final determination when the Appeals Council denied review on August 26, 2005.  (Tr. at 6-8).

On October 26, 2005, Paratore brought this action pursuant to 42 U.S.C. § 405(g) seeking review of the Commissioner's final determination. The Commissioner then filed an answer and a certified administrative

---

[1] "(Tr.)" refers to the page of the Administrative Transcript in this case.

2

transcript, Paratore filed a brief, and the Commissioner responded.

### III.  Contentions

Paratore contends that the Commissioner's decision is not supported by substantial evidence.  She claims the ALJ erroneously (1) determined that her alleged mental impairments did not meet or equal the impairments listed at 20 C.F.R. Part 404, Subpart B, Appendix 1, Part A Section 12.04 and Part B Section 112.04; (2) improperly disregarded the opinion of Plaintiff's treating physician; and (3) improperly evaluated her credibility. The Commissioner counters that substantial evidence supports the ALJ's decision.

### IV.  Facts

The evidence in this case is undisputed and the court adopts the parties' factual recitations.  *See Pl.'s Br. at 3-5; Def.'s Br. at 2*.

### V.  Discussion

#### A.    Standard and Scope of Review

When reviewing the Commissioner's final decision under 42 U.S.C. 405(g),[2] the court "must determine whether the correct legal standards

_____

[2]The section 405(g) standard of review in disability insurance proceedings under Title II of the Social Security Act also applies to supplemental security income proceedings under Title XVI of the Act.  *See* 42 U.S.C. § 1383(c)(3).  Similarly, the

were applied and whether substantial evidence supports the decision."
*Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) (citation omitted).  It
does not determine *de novo* whether a claimant is disabled.  *See Curry v.
Apfel*, 209 F.3d 117, 122 (2d Cir. 2000) (citation omitted).  Although the
Commissioner is ultimately responsible for determining a claimant's
eligibility, the actual disability determination is made by an ALJ, and that
decision is subject to judicial review on appeal.  A court may not affirm an
ALJ's decision if it reasonably doubts whether the proper legal standards
were applied, even if it appears to be supported by substantial evidence.
*See Pollard v. Halter*, 377 F.3d 183, 188-89 (2d Cir. 2004) (citation
omitted); *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).  "Failure to
apply the correct legal standards is grounds for reversal."  *Pollard*, 377
F.3d at 189 (internal quotation marks and citation omitted).

A court's factual review of the Commissioner's decision is limited to
the determination of whether substantial evidence in the record supports
the decision.  *See* 42 U.S.C. § 405(g); *see also Rivera v. Sullivan*, 923 F.2d
964, 967 (2d Cir. 1991).  "Substantial evidence ... means such relevant

---

analysis of supplemental income claims under Title XVI parallels, in relevant part, the
statutory and regulatory framework applicable to disability claims under Title II.  *See
Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003).

evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal quotation marks omitted).  It must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *See Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citations omitted).  However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  *See* 42 U.S.C. § 405(g); *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

        The court has the authority to affirm, reverse, or modify a final

decision of the Commissioner with or without remand.  42 U.S.C. § 405(g); *Butts*, 388 F.3d at 385.  Remand is warranted where there are gaps in the record and further development of the evidence is needed, or where the ALJ has applied an improper legal standard.  *See Butts*, 388 F.3d at 385; *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999); *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980).  Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision.  *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (citation omitted).  By contrast, reversal and remand solely for calculation of benefits is appropriate when there is "persuasive proof of disability" and further development of the record would not serve any purpose.  *Rosa*, 168 F.3d at 83; *Parker*, 626 F.2d at 235; *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983) (reversal without remand for additional evidence particularly appropriate where payment of benefits already delayed for four years and remand would likely result in further lengthening the "painfully slow process" of determining disability).  However, absent sufficient evidence of disability, delay alone is not a valid basis for remand solely for calculation of benefits.  *See Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996) (citation omitted).

### B.    Five-Step Disability Determination

A plaintiff seeking Social Security Disability Insurance (SSDI) and Supplemental Security Income (SSI) benefits is disabled if she can establish that she is unable "to engage in *any* substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months ...."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)[3] (emphasis added).

The Commissioner uses a five-step process to evaluate SSDI and SSI claims.  *See* 20 C.F.R. §§ 404.1520, 416.920.  Step One requires the ALJ to determine whether the claimant is presently engaging in substantial gainful activity (SGA).  20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, she is not considered disabled.  However, if she is not engaged in SGA, Step Two requires that the ALJ determine whether the claimant has a severe

———————————————

[3]In addition, a claimant's physical or mental impairment or impairments [must be] of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for h[er], or whether [s]he would be hired if [s]he applied for work.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  Therefore, a plaintiff must not only carry a medically determinable impairment but an impairment so severe as to prevent her from engaging in any kind of substantial gainful work which exists in the national economy.

impairment.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from a severe impairment, Step Three requires that the ALJ determine whether the claimant's impairment meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 404.1520(d), 416.920(d).  The claimant is presumptively disabled if the impairment meets or equals a listed impairment.  *See Ferraris*, 728 F.2d at 584.  If the claimant is not presumptively disabled, Step Four requires the ALJ to consider whether the claimant's residual functional capacity (RFC) precludes the performance of her past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  At Step Five, the ALJ determines whether the claimant can do any other work.  20 C.F.R. §§ 404.1520(g), 416.920(g).

The claimant has the burden of showing that she cannot perform past relevant work.  *Ferraris*, 728 F.2d at 584.  However, once she has met that burden, the ALJ can deny benefits only by showing, with specific reference to medical evidence, that she can perform some less demanding work. *See White v. Sec'y of Health & Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990); *Ferraris*, 728 F.2d at 584.  In making this showing, the ALJ must consider the claimant's RFC, age, education, past work experience, and transferability of skills, to determine if she can perform other work existing

in the national economy.  20 C.F.R. §§ 404.1520(g), 416.920(g); *see New York v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990).

In this case, the ALJ found that Paratore satisfied Step One because she had not worked since September 15, 1999.  (Tr. 20, 24, 26, 28).  In Step Two, the ALJ determined that she suffered from major depressive disorder.  (Tr. 25, 28).[4]  In Step Three, the ALJ determined that this impairment failed to meet or equal a combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.  (Tr. 25, 28).  In Step Four, the ALJ determined that Paratore retained the RFC to perform work at any exertional level, subject to the following non-exertional limitations: marked limitations in maintaining attention and concentration for extended periods; mild limitations in her ability to remember locations and work-like procedures, understanding, remembering, and carrying out short, simple instructions, performing activities within a schedule, maintaining regular attendance, and being

---

[4]The ALJ also found that Plaintiff suffered from no severe physical impairments. (Tr. at 24).  He concluded that although she at one point suffered from hyperthyroidism, those symptoms had resolved and she had not taken medication for the condition since 2001 when her condition was assessed as stable.  (Tr. at 24, 263-68).  Additionally, he concluded that while she had complained of intermittent gastrointestinal problems, no objective medical findings revealed any gastrointestinal impairment.  (Tr. at 24, 179-84, 251-53, 261-62, 265).

punctual, sustaining an ordinary routine work setting; and moderate

limitations in her ability to understand, remember, and carry out detailed or

complex instructions, work with or near others without being distracted by

them, complete a normal workday or workweek, perform at a consistent

pace, interact appropriately with the public, and respond appropriately.  (Tr.

at 27-19).  Based on vocational expert testimony which he deemed

consistent with the Dictionary of Occupational Titles, the ALJ determined

that Plaintiff retained the RFC to perform her past work as a housekeeper

and janitor.  (Tr. 27-29).  In Step Five, the ALJ found that even if Plaintiff

could not perform her past relevant work, she could perform other work

existing in significant numbers in the national economy.  (Tr. at 27, 29).

Consequently, he found Paratore not disabled and denied benefits.  (Tr. at

29).

    **C.**   **Analysis**

        *1.*   *Plaintiff's Mental Impairment*

Plaintiff argues that the ALJ erred in determining that her mental

impairment did not meet or equal an impairment listed in 20 C.F.R. Part

404, Subpart P, Appendix 1 (the "Listings").  Specifically, Plaintiff argues

that her mental impairment met Listing 12.04 and 112.04.  Initially, the

10

Court rejects Plaintiff's argument that her impairment met Listing 112.04,

because this listing applies to children under the age of eighteen.  Plaintiff

was age thirty-one at the time of the ALJ's decision, and she was over the

age of eighteen at all relevant intervals in this proceeding.  (*See* Tr. at 23,

230).

Listing 12.04 provides:

> 12.04 Affective disorders: Characterized by a disturbance of mood,
> accompanied by a full or partial manic or depressive syndrome.
> Mood refers to a prolonged emotion that colors the whole psychic
> life; it generally involves either depression or elation.
>
> The required level of severity for these disorders is met when the
> requirements in both A and B are satisfied, or when the
> requirements in C are satisfied.
>
> A. Medically documented persistence, either continuous or
> intermittent, of one of the following:
>
> 1. Depressive syndrome characterized by at least four of the
> following:
>
> a. Anhedonia or pervasive loss of interest in almost all activities; or
>
> b. Appetite disturbance with change in weight; or
>
> c. Sleep disturbance; or
>
> d. Psychomotor agitation or retardation; or
>
> e. Decreased energy; or
>
> f. Feelings of guilt or worthlessness; or
>
> g. Difficulty concentrating or thinking; or
>
> h. Thoughts of suicide; or

11

i. Hallucinations, delusions, or paranoid thinking; or

2. Manic syndrome characterized by at least three of the following:

a. Hyperactivity; or

b. Pressure of speech; or

c. Flight of ideas; or

d. Inflated self-esteem; or

e. Decreased need for sleep; or

f. Easy distractibility; or

g. Involvement in activities that have a high probability of painful consequences which are not recognized; or

h. Hallucinations, delusions or paranoid thinking; or

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

AND

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration;

OR

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal

limitation of ability to do basic work activities, with symptoms or
signs currently attenuated by medication or psychosocial support,
and one of the following:

1. Repeated episodes of decompensation, each of extended
duration; or

2. A residual disease process that has resulted in such marginal
adjustment that even a minimal increase in mental demands or
change in the environment would be predicted to cause the
individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a
highly supportive living arrangement, with an indication of continued
need for such an arrangement.

The ALJ determined that Plaintiff's mental impairment, depressive disorder,
met the criteria of Section 12.04(A), but did not meet either Section
12.04(B) or (C).  In so deciding, the ALJ relied on the testimony of medical
expert Dr. Peter Bennett, who testified that although Plaintiff may have met
subsection (A) of Section 12.04, she had not met subsection (B) or (C).
(Tr. at 26, 304-05, 363).  Additionally, the ALJ relied on the opinion of state
agency physician Dr. Abdul Hameed, who found that Plaintiff had not met
the criteria of any listing.  (Tr. at 26, 209).

Subsection (B) requires that a plaintiff's mental impairment result in at
least two of the following: (1) marked restrictions in activities of daily living;
(2) marked restrictions in social functioning; (3) marked restrictions in
maintaining concentration, persistence, or pace; (4) repeated episodes of

13

decompensation, each of extended duration.  The ALJ in this case found

that Plaintiff suffered from marked restrictions in maintaining concentration,

persistence, or pace, but only mild limitations in activities of daily living,

moderate restrictions of social functioning, and no episodes of

decompensation.  (Tr. at 25).  Accordingly, he found that subsection (B)

was not met.

The record establishes that Plaintiff participated in various activities

of daily living, including helping her mother with household chores,

watching television, cooking, walking, reading the bible, books, magazines,

and newspapers, driving, attending church twice a week, keeping her

doctor's appointments, grocery shopping, visiting her aunt, going to the

library, and taking care of her personal needs.  (Tr. at 20, 246, 277, 339-40,

351).  Thus, the Court finds that substantial evidence supports the ALJ's

decision that Plaintiff suffered from only a mild impairment in activities of

daily living.

The record also fails to establish marked restrictions in social

functioning.  Plaintiff had a boyfriend with whom she maintained a

relationship, attended social events such as a birthday party, went out with

her mother on occasion, and got along with her mother "ok."  (Tr. at 179,

242, 341).  Given this evidence, the ALJ's decision that Plaintiff suffered

from only moderate restrictions in social functioning was warranted.

Finally, there is no evidence that Plaintiff suffered any episodes of

decompensation.  Thus, the Court finds that the ALJ correctly determined

that the requirements of subsection (B) were not met.  Likewise, the Court

determines that there is no evidence in the record which would fulfill the

requirements of Section 12.04(C).

The Court thus finds that substantial evidence supports the ALJ's

determination that Plaintiff's mental impairment did not meet or equal a

listed impairment.  Plaintiff's related argument that the ALJ failed to

properly weigh the opinion of her treating physician, Dr. Tabrizi, will be

addressed below.

### 2.   <u>Treating Physician Rule</u>

Paratore argues that the ALJ erroneously disregarded the opinion of

her treating physician, Dr. Tabrizi.  Generally, the opinion of a treating

physician is given controlling weight if it is based upon well-supported,

medically acceptable clinical and laboratory diagnostic techniques and is

not inconsistent with other substantial evidence.  20 C.F.R. §§

404.1527(d)(2), 416.927(d)(2); *see Schaal v. Apfel*, 134 F.3d 496 (2d Cir.

1998).  As already noted, an ALJ may not arbitrarily substitute his own

judgment for a competent medical opinion.  *Rosa*, 168 F.3d at 79.  Thus, if

the treating physician's opinion is not given controlling weight, the ALJ

must assess several factors to determine how much weight to afford the

opinion: the length of the treatment relationship, the frequency of

examination by the treating physician for the condition(s) in question, the

medical evidence supporting the opinion, the consistency of the opinion

with the record as a whole, the qualifications of the treating physician, and

other factors tending to support or contradict the opinion.  20 C.F.R. §§

404.1527(d)(2)-(6), 416.927(d)(2)-(6).

Moreover, the "ultimate finding of whether a claimant is disabled and

cannot work [is] 'reserved to the Commissioner.'"  *Snell v. Apfel*, 177 F.3d

128, 133 (2d Cir. 1999) (citation omitted); *see* 20 C.F.R. §§ 404.1527(e)(1),

416.927(e)(1).  "That means that the Social Security Administration

considers the data that physicians provide but draws its own conclusions."

*Snell*, 177 F.3d at 133.   Thus, a treating physician's disability assessment

is not determinative.  *Id.*  Where the evidence of record includes medical

source opinions that are inconsistent with other evidence or are internally

inconsistent, the ALJ must weigh all of the evidence and make a disability

determination based on the totality of that evidence.  *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Plaintiff argues that a January 14, 2004 medical assessment completed by Dr. Tabrizi should have been given controlling weight by the ALJ.  (*See* Tr. at 298-300).  This assessment found that Plaintiff had a poor ability to: follow work rules; relate to coworkers; deal with the public; interact with supervisors; deal with work stress; function independently; maintain attention and concentration; understand, remember, and carry out complex job instructions, detailed but not complex job instructions, and simple job instructions; behave in an emotionally stable manner; relate predictably in social situations; and demonstrate reliability.  (Tr. at 298-99).

The ALJ determined that Dr. Tabrizi's assessment was inconsistent with the medical record as a whole as well as Dr. Tabrizi's own treatment notes.  (Tr. at 26).  Initially, the ALJ properly noted that Dr. Tabrizi's opinion of disability is not dispositive, as that determination is reserved to the Commissioner.  *See Snell*, 177 F.3d at 133.  The ALJ noted that Dr. Tabrizi's opinion was contradicted by the testimony of Dr. Bennett, who testified that Dr. Tabrizi's assessment, if correct, would describe an institutionalized individual who is unable to function.  (Tr. at 26, 351-52,

17

369).

Dr. Barry,[5] a consulting psychologist, found that although Plaintiff was lethargic and apathetic, she was not overly anxious; there was no evdience of a thought disorder; her sensorium was clear and she was oriented to time, place, and person; her intention was mildly impaired but she could do serial 3's and simple calculations; and her recent and remote memory was intact. (Tr. at 201). Dr. Barry noted that Plaintiff was able to dress, bathe, and groom herself, did cleaning and laundry, was able to manage her own funds and drive, and that her family relationships were fair. (Tr. at 202). Dr. Barry opined that Plaintiff could follow and understand simple instructions. *Id.* She also noted that although Plaintiff scored in the deficient range on an intelligence test, Plaintiff appeared "very evasive," "did not appear to be putting forth her best effort," and "may be in part be malingering." *Id.*

In his treatment notes, Dr. Tabrizi indicated that Plaintiff had a good

---

[5] Plaintiff argues that the ALJ misrepresented Dr. Barry's assessment in his decision, erroneously highlighting only the negative portions of her statement. *Pl.'s Br. at* 16. The Court finds no evidence that this is the case. The ALJ was not required to address every single finding of Dr. Barry's report, as long as it was given a full and fair representation. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (citation omitted). The ALJ's decision contained a thorough and accurate representation of Dr. Barry's assessment. (*See* Tr. at 22).

memory and average intelligence.  (Tr. at 285-86).  His treatment notes

also failed to document the extensive functional limitations indicated by the

January 2004 opinion, although they did indicate that Plaintiff was

depressed.  (Tr. at 230-46).  Moreover, Plaintiff was able to perform a

substantial number of daily activities which indicated that she was not as

functionally limited as Dr. Tabrizi's opinion would suggest.  (*See* Tr. at 246,

277, 339-40, 351).

The ALJ's decision contains a thorough analysis of Dr. Tabrizi's

opinion as it relates to the rest of the medical record.  (Tr. at 26).

Accordingly, based on the above, the ALJ did not err in determining that Dr.

Tabrizi's opinion was not entitled to controlling weight.

### 3.   *Credibility*

Paratore claims that the ALJ improperly evaluated her credibility.

*Pl.'s Br. at 17-19.*  The court recognizes the inherent difficulty in evaluating

a claimant's credibility without actual physical contact.  The ALJ is entitled

to evaluate a claimant's credibility and reach an independent judgment

regarding subjective symptoms in light of the objective medical evidence

and other evidence regarding the true extent of the alleged symptoms.

*See Mimms*, 750 F.2d at 185.  This makes the review of an ALJ's credibility

19

assessment particularly onerous and frequently results in significant deference to the ALJ.

The ALJ must perform a two-step analysis.  *See* 20 C.F.R. § 404.1529; *see also Crouch v. Comm'r, Soc. Sec. Admin.*, No. 6:01-CV-0899 LEK/GJD, 2003 WL 22145644, at *10 (N.D.N.Y. Sept. 11, 2003) (citation omitted).  First, based upon the objective medical evidence, the ALJ must determine whether the impairments "could reasonably be expected to produce the pain or other symptoms alleged ...."  20 C.F.R. §§ 404.1529(a), 416.929(a); *see Crouch*, 2003 WL 22145644 at *10. "Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work."  *Crouch*, 2003 WL 22145644 at *10 (citing 20 C.F.R. §§ 404.1529(c), 416.929(c)).

Where the alleged symptoms suggest that the impairment is greater than demonstrated by objective medical evidence, the ALJ will consider other factors, such as daily activities, the location, duration, frequency and intensity of symptoms, the type, effectiveness and side effects of medication, and other treatment or measures to relieve those symptoms.

*See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p.  "The reasons

for the credibility finding must be grounded in the evidence and articulated

in the determination or decision."  SSR 96-7p.  Accordingly, "[a]n [ALJ] may

properly reject [subjective complaints] after weighing the objective medical

evidence in the record, the claimant's demeanor, and other indicia of

credibility, but must [do so explicitly and] set forth his or her reasons with

sufficient specificity to enable [the courts] to decide whether the

determination is supported by substantial evidence."  *Paratore v. Apfel*, 62

F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (internal quotation marks, citation

omitted); *see Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987).

     The court has reviewed Paratore's testimony regarding symptoms

and limitations and the summary of this testimony in the ALJ's decision.

(Tr. at 26-27).  The ALJ found that Plaintiff's allegations as to her limitations

were overstated.  *Id.*  He noted that she reported looking for work

throughout the application and appeals process, and that she had reported

actually working at different points following her alleged onset date – both

acts which the ALJ deemed inconsistent with Plaintiff's complaints of a

disabling condition.  (Tr. at 26, 246-47, 343).  Plaintiff also expressed an

interest in volunteering at a soup kitchen or food bank, which contradicted

both her subjective complaints of limitation and her assertion that she feared being around crowds.  (Tr. at 26, 340).  Although Plaintiff alleged concentration difficulties, she reported going to the library, attending church, and driving on a daily basis.  (Tr. at 202, 339).  The ALJ also noted that Dr. Barry thought Plaintiff might be malingering, and that Plaintiff admitted going to the library two days before the hearing to "read up" on depression.  (Tr. at 22, 202, 351-52).

Based on the foregoing, the Court concludes that the ALJ had ample evidence on which to base his conclusion that Plaintiff's allegations were not fully credible.  The ALJ properly articulated his rationale, which is supported by substantial  evidence.  *See* SSR 96-7p.  Therefore, the ALJ properly evaluated and disregarded Paratore's subjective complaints.

## VI. Conclusion

After careful review of the entire record, and for the reasons stated, the Commissioner's denial of benefits was based on substantial evidence and not erroneous as a matter of law.  Accordingly, the ALJ's decision is affirmed.

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision denying disability benefits is

22

**AFFIRMED**; and it is further

ORDERED that the Clerk serve a copy of this Decision and Order on

the parties.

Dated:       February 22, 2008

United States District Court Judge